IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | |
|---|---|
| MARQUITA LASHONE MACK, | ) |
| Plaintiff, | ) |
| v. | ) 1:16CV90 |
| CAROLYN W. COLVIN, Acting Commissioner of Social Security, | ) |
| Defendant. | ) |

## MEMORANDUM OPINION AND RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE

Plaintiff, Marquita Lashone Mack, seeks review of a final decision of the Commissioner of Social Security denying her claim for a Period of Disability and Disability Insurance Benefits ("DIB") and Social Security Income ("SSI"). The Court has before it the certified administrative record and cross-motions for judgment. (Docket Entries 13, 15, 17.) For reasons discussed below, it is recommended that Plaintiff's motion for judgment on the pleadings (Docket Entry 15) be denied, Defendant's motion for judgment on the pleadings (Docket Entry 17) be granted, and that the Commissioner's decision be upheld.

## I. PROCEDURAL HISTORY

Plaintiff applied for DIB and SSI in January 2013, alleging a disability onset date of December 27, 2011. (Tr. 260-69.)[1] Her applications were denied initially and upon reconsideration. (Tr. 85-88.) Thereafter, Plaintiff requested a hearing de novo before an

---

[1] Transcript citations refer to the sealed administrative record which was filed with Defendant's Answer. (Docket Entry 13.)

1

Administrative Law Judge ("ALJ"). (Tr. 137.) Plaintiff, her attorney, and a vocational expert ("VE") appeared at the hearing on January 7, 2015. (Tr. 34-64.) At the hearing, the ALJ decided to order a consultative physical examination. (Tr. 51.) Plaintiff attended the consultative physical examination. (551-62.) On July 27, 2015, the ALJ held a second hearing. (Tr. 33-52.) Plaintiff, her attorney, and another VE appeared at the second hearing. (*Id.*) A decision was issued on July 30, 2015, upholding the denial of Plaintiff's application for DIB and SSI. (Tr. 12-32.) On December 16, 2015, the Appeals Council denied Plaintiff's request for review of the decision, thereby making the ALJ's determination the Commissioner's final decision for purposes of judicial review. (Tr. 1-6.)

## II. STANDARD OF REVIEW

The Commissioner held that Plaintiff was not under a disability within the meaning of the Act. Under 42 U.S.C. § 405(g), the scope of judicial review of the Commissioner's final decision is specific and narrow. *Smith v. Schweiker*, 795 F.2d 343, 345 (4th Cir. 1986). This Court's review of that decision is limited to determining whether there is substantial evidence in the record to support the Commissioner's decision. 42 U.S.C. § 405(g); *Hunter v. Sullivan*, 993 F.2d 31, 34 (4th Cir. 1992); *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990). "Substantial evidence is 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Hunter*, 993 F.2d at 34 (citing *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). "[It] 'consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance.'" *Id.* (quoting *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966)). The denial of benefits will be reversed only if no reasonable mind could accept the record as

2

adequate to support the determination. *Richardson*, 402 U.S. at 401. The issue before the Court, therefore, is not whether Plaintiff is disabled, but whether the Commissioner's finding that Plaintiff is not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law. *Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987).

Thus, "[a] claimant for disability benefits bears the burden of proving a disability," *Hall v. Harris*, 658 F.2d 260, 264 (4th Cir. 1981), and in this context, "disability" means the "'inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months[.]'" *Id.* (quoting 42 U.S.C. § 423(d)(1)(A)). "To regularize the adjudicative process, the Social Security Administration has . . . promulgated . . . detailed regulations incorporating longstanding medical-vocational evaluation policies that take into account a claimant's age, education, and work experience in addition to [the claimant's] medical condition." *Id.* "These regulations establish a 'sequential evaluation process' to determine whether a claimant is disabled." *Id.* (internal citations omitted).

This sequential evaluation process ("SEP") has up to five steps: "The claimant (1) must not be engaged in 'substantial gainful activity,' *i.e.*, currently working; and (2) must have a 'severe' impairment that (3) meets or exceeds the 'listings' of specified impairments, or is otherwise incapacitating to the extent that the claimant does not possess the residual functional capacity ("RFC") to (4) perform [the claimant's] past work or (5) any other work." *Albright v. Comm'r of Soc. Sec. Admin.*, 174 F.3d 473, 475 n.2 (4th Cir. 1999) (citing 20 C.F.R. § 404.1520);

*see also* 20 C.F.R. § 416.920. The law concerning these five steps is well-established. *See, e.g., Mastro v. Apfel*, 270 F.3d 171, 177-180 (4th Cir. 2001); *Hall*, 658 F.2d at 264-65.

### III. THE ALJ'S DISCUSSION

The ALJ followed the well-established five-step sequential analysis to ascertain whether Plaintiff is disabled, which is set forth in 20 C.F.R. § 404.1520. *See Albright*, 174 F.3d at 475 n.2; *see also* 20 C.F.R. § 416.920. In rendering his disability determination, the ALJ made the following findings later adopted by Defendant:

1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2016.

2. The claimant has not engage in substantial gainful activity since December 27, 2011, the alleged onset date (20 CFR 404.1571 *et seq.*, and 416.971 *et seq.*).
   . . . .

3. The claimant has the following severe impairments: degenerative disc disease; plantar fasciitis; osteoarthritis of the knees; obesity; and depression (20 CFR 404.1520(c) and 416.920 (c)).
   . . . .

4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416925 and 416.926).
   . . . .

5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity ("RFC") to perform less than full range of sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a) in that she can occasionally lift, carry, push, and pull up to 10 pounds, frequently lift, carry, push, and pull up to five pounds as well as stand/walk about two hours in an eight-hour workday and sit for about six

4

hours in an eight-hour workday. She would need to change from sitting to standing every 30 minutes for one to two minutes. The claimant required an assistive device for prolonged ambulation and walking on uneven terrain. She can occasionally operate foot controls. She can frequently reach overhead, reach in all other directions, handle, finger, and feel with both upper extremities. The claimant can never climb ladders, ropes, or scaffolds or balance. She can never be exposed to unprotected heights, moving mechanical parts, or operate a motor vehicle. The claimant can occasionally be exposed to weather. She can frequently be exposed to humidity, wetness, dust, odors, fumes, pulmonary irritants, extreme cold, extreme heat, and vibrations. She is limited to performing simple, routine, repetitive tasks, but not a production rate pace (e.g. assembly-line work). The claimant can make simple work-related decisions when using her judgment and dealing with changes in the work setting. She can occasionally respond appropriately to supervisors, co-workers, and the public.

(Tr. 17, 20.) In light of the above findings regarding Plaintiff's RFC, the ALJ determined that Plaintiff was unable to perform her past relevant work as a housekeeper specialist/cleaner. (Tr. 25-26.) Based upon Plaintiff's age, education, work experience, and her RFC, the ALJ concluded "there are jobs that exist in significant numbers in the national economy that the claimant can perform." (*Id.* (citing 20 C.F.R. §§ 404.1569, 404.1569(a), 416.969, and 416.969(a)). Accordingly, the ALJ concluded that Plaintiff was not disabled. (Tr. 27.)

## IV. ANALYSIS

Plaintiff argues that the ALJ "committed reversible error by according more weight to the opinions of a non-treating consultative examiner and non-examining state agency psychological consultant than to the claimant's treating provider." (Docket Entry 16 at 3.)

### A. Dr. Kristin Ito and Amy Ford's Opinion

Plaintiff asserts that the ALJ erred by not giving controlling weight to Plaintiff's treating

5

physician. (Docket Entry 10 at 5-8.) Plaintiff's argument fails. The "treating physician rule," 20 C.F.R. § 404.1527(c)(2), generally provides more weight to the opinion of a treating source, because it may "provide a detailed, longitudinal picture of [the claimant's] medical impairment(s) [which] may bring a unique perspective to the medical evidence . . . ." 20 C.F.R. § 404.1527(c)(2); *see also* 20 C.F.R. § 416.927(c)(2).[2] An ALJ refusing to accord controlling weight to the medical opinion of a treating physician must consider various "factors" to determine how much weight to give it. 20 C.F.R § 404.1527(c)(2)-(6); *see also* 20 C.F.R. § 416.927(c)(2)-(6). These factors include: (i) the frequency of examination and the length, nature and extent of the treatment relationship; (ii) the evidence in support of the treating physician's opinion; (iii) the consistency of the opinion with the record as a whole; (iv) whether the opinion is from a specialist; and (v) other factors brought to the Social Security Administration's attention that tend to support or contradict the opinion. 20 C.F.R § 404.1527(c)(2)-(6); *see also* 20 C.F.R. § 416.927(c)(2)-(6).

Significantly, as subsections (2) through (4) of the rule describe in great detail, a treating source's opinion, like all medical opinions, must be both well-supported by medical signs and laboratory findings as well as consistent with the other substantial evidence in the case record. 20 C.F.R § 404.1527(c)(2)-(4); *see also* 20 C.F.R. § 416.927(c)(2)-(4). "[I]f a physician's opinion is not supported by clinical evidence or if it is inconsistent with other substantial evidence, it

---

[2] SSR 96–2p provides that "[c]ontrolling weight may not be given to a treating source's medical opinion unless the opinion is well-supported by medically acceptable clinical and laboratory diagnostic techniques." SSR 96-2p, 1996 WL 374188, at *1 (July 2, 1996). However, where "a treating source's medical opinion is well-supported and not inconsistent with the other substantial evidence in the case record, it must be given controlling weight[.]" *Id.*

6

should be accorded significantly less weight." *Craig v. Chater*, 76 F.3d 585, 590 (4th Cir. 1996); *accord Mastro*, 270 F.3d at 178.

Plaintiff contends that the ALJ failed to give the proper weight to the opinion signed by Amy Ford, PA-C and Dr. Kristin Ito. (Docket Entry 16 at 3-5.) A medical source statement was signed by Ms. Ford and Dr. Ito in February 2014. (Tr. 440-41.) The opinion states that Plaintiff could stand and sit for 15 minutes at a time but that she could do neither for any length of time for an entire workday. (Tr. 440.) It was also noted that Plaintiff could lift 10 pounds and occasionally bend, balance, raise her arms over her shoulder and tolerate heat, cold, dust, smoke, fumes and noise exposure. (*Id.*) Plaintiff could never stoop, work around dangerous machinery, or operate a motor vehicle. (*Id.*) It was also found that Plaintiff would need to frequently elevate her legs during an eight hour workday and use a cane to ambulate. (*Id.*)

The ALJ gave partial weight to this opinion, in part, because "it was . . . unclear as to who actually treated the claimant, the PA-C or the actual doctor." (Tr. 21.) According to SSR 06-03P, only opinions from "acceptable medical sources" may be entitled to controlling weight. SSR 06–03p, 2006 WL 2329939, at *1 (Aug. 9, 2006) (internal citations omitted). "Physician's assistants do not qualify as acceptable medical sources under the regulations; instead, they qualify as other sources, who can offer evidence of impairments and their severity, but are not explicitly entitled to the enhanced evidentiary value enjoyed by treating sources." *Clore v. Colvin*, No. 2:13-CV-00023-FDW, 2014 WL 294640, at *6 (W.D.N.C. Jan. 27, 2014), *appeal dismissed* (June 4, 2014) (unpublished) (internal citations and quotations

omitted). It is unclear from the record whether Plaintiff was treated by the physician's assistant or the physician herself because both individuals signed the opinion. Plaintiff's disability report indicates that Plaintiff was actually treated by Ms. Ford. (Tr. 328.) However, in a representative brief addressed to the ALJ, Plaintiff's attorney stated that Plaintiff was treated by Dr. Ito and that the opinion was hers. (Tr. 353.)

Courts have found that "where a physician's assistant has treated a patient under the supervision of physicians and renders an opinion based on the course and scope of such supervised treatment, the physician's assistant's opinion deserves the same weight as that of a treating physician." *See, e.g., Argeris v. Colvin*, No. 5:15-CV-264-BO, 2016 WL 3951089, at *2 (E.D.N.C. July 18, 2016) (unpublished). In other words, "if the facts of treatment show the primary caregiver is a non-acceptable medical source, such as a nurse practitioner, and a doctor adopts the findings and information about the patient and is engaged in the treatment, the nurse practitioner's evaluation becomes the report of the doctor." *Id.* It is clear from record that Dr. Ito signed the opinion. (Tr. 441.) Thus, the Court will treat the medical source statement as Dr. Ito's opinion. *See Argeris*, 2016 WL 3951089, at *2 (finding the ALJ erred in discounting the weight given to a questionnaire conducted by the physician's assistant because, although the opinion was completed by the physician's assistant, it was signed by the physician as well); *Russell v. Colvin*, No. 5:14-CV-00045, 2015 WL 4484891, at *7 (W.D. Va. July 22, 2015) (unpublished) (finding that although the plaintiff was mostly treated and examined by the physician's assistant and nurse, the physician "reviewed many . . . treatment notes and adopted them with his signature on the date of service" thereby, allowing the

8

Case 1:16-cv-00090-CCE-JLW Document 19 Filed 11/29/16 Page 8 of 15

opinions to be considered treating source opinions); *Alexander v. Colvin*, No. 9:14-2194-MGL-BM, 2015 WL 2399846, at *6 (D.S.C. May 19, 2015) (unpublished) (the ALJ failed to properly consider the physician's opinions as treating source opinions because he believed that they were conducted by the physician assistant, when in fact the opinions "both clearly [contained] the signature of [the physician], in addition to that of [the physician's assistant]").

Nevertheless, the ALJ also noted that "some of the limitations given [in Dr. Ito's opinion] appear to be extreme considering [Plaintiff's] impairments and her treatment for such." (Tr. 21.) Thus, the ALJ provided a valid reason to discount Dr. Ito's opinion. *Somerville v. Colvin*, No. 1:12CV1360, 2015 WL 1268258, at *3 (M.D.N.C. Mar. 19, 2015) (unpublished) (concluding that the ALJ's decision to give the physician's opinion less than controlling weight was supported by substantial evidence because the physician's opinion was inconsistent with the conservative treatment given to the plaintiff which included injections, medication "hand splint, physical therapy, and chiropractor treatment"); *see also Bright v. Colvin*, No. 4:13-CV-226-FL, 2014 WL 5871348, at *10 (E.D.N.C. Nov. 12, 2014) (unpublished) (finding that substantial evidence supported the ALJ's reasoning to give the plaintiff's treating physician less than controlling weight in part because the physician's opinion was inconsistent with the conservative treatment the plaintiff received); *Lucas v. Astrue*, No. 5:12-CV-131-FL, 2012 WL 6917052, at *6 (E.D.N.C. Dec. 28, 2012), *report and recommendation adopted*, No. 5:12-CV-131-FL, 2013 WL 239195 (E.D.N.C. Jan. 22, 2013) (unpublished) ("The ALJ properly concluded that treatment notes and the prescribed course of treatment therein do not support [the physician's] disability opinion.").

In addition, the ALJ noted that "on more than one occasion that . . . Plaintiff did not use any medications for her foot pain or her osteoarthritis." (Tr. 24, 374, 405.) The ALJ furthered stated that Plaintiff underwent several epidural steroid injections for her back, which she acknowledged helped for several months at a time. (Tr. 24, 530, 532, 534.) Additionally, the ALJ reasoned that even though Plaintiff indicated that her symptoms caused her pain on a daily basis, no surgery has ever been recommended by any of her doctors. (Tr. 24) The ALJ also noted that on multiple occasions, because of her age, she was told to diet and exercise to slow down the progression of some of her impairments. (*Id.*; 472, 477, 486, 511.) Additionally, the ALJ gave great weight to the opinion of Dr. Jairon Downs. Dr. Downs determined that Plaintiff

> could occasionally lift and carry up to 10 pounds. She could walk between 30 minutes to an hour at one time. The claimant could sit for about eight hours during an eight-hour workday, stand for four hours and walk for two hours. She would need a cane to ambulate. The claimant could only ambulate about 50-100 feet without the cane. She could use both hands to reach overhead, reach in all other directions, handle, finger, and feel, but she could only use left hand occasionally for reaching overhead. The claimant could occasionally use both feet to operate foot controls. The claimant could occasionally climb stairs and ramps, stoop, kneel, crouch, and crawl, but never climb ladders, ropes, or scaffolds and balance. She could continuously be exposed to humidity, wetness, dust, odors, fumes, and pulmonary irritants, extreme cold, extreme heat, and vibrations. The claimant could frequently be exposed to moving mechanical parts and operate a motor vehicle, but never be exposed to unprotected heights. She could perform all activities of daily living.

(Tr. 22-23, 556-61.) Dr. Downs also concluded "that on clinical examination, the claimant had tenderness in the left shoulder, lumbar paraspinals, both medial malleoli and plantar aspect of both feet. She had an abnormal gait, but otherwise had no evidence of acute or chronic physical illness . . . ." (Tr. 22, 554.) Plaintiff's musculoskeletal examination revealed "intact

10

ranges of motion and strengths, except in the left shoulder and lumbar spine. There was no measured muscular asymmetry or atrophy, deficits of motor, sensory or reflex functions of the upper or lower extremities." (Tr. 22, 554.) Plaintiff could "complete short distances in office without an assistive device, but used an assistive device (cane) for longer distances and balance. [She] was able to sit, stand and walk unassisted as well as lift, carry and handle objects with both gross and fine manual motor dexterity." (Tr. 22, 554.) The examination "showed no joint swelling, erythema, effusion, tenderness or deformity, except tenderness in the plantar aspect of both feet, medial ankle bilaterally, tender left anterior shoulder, and tender lumbar paraspinal muscles." (Tr. 22, 553.) Plaintiff "was unable to walk on her heels and toes and her tandem walking was abnormal." (Tr. 22, 553.) Plaintiff "was unable to squat and rise from that position with ease, but she was able to rise from a sitting position without assistance and only had mild difficulty getting up and down from the examination table." (Tr. 22, 553.) Therefore, the ALJ's decision to give less than controlling weight to Dr. Ito's opinion is valid and supported by substantial evidence.

B. Dr. Kashefsky's Opinion

Substantial evidence supports the ALJ's decision to afford less than controlling weight to Dr. Kashefsky's opinion due to the inconsistencies between Dr. Kashefsky's opinion and the conservative treatment Plaintiff received.[3] Dr. Kashefsky opined that Plaintiff could

---

[3] Plaintiff also contends that the ALJ "did not consider that Dr. Howard Kashefsky is a specialist – a Doctor of Podiatric Medicine." (Docket Entry 16 at 7.) Whether an opinion is from a specialist is a factor considered to determine the weight given to an opinion. 20 C.F.R § 404.1527(c); *see also* 20 C.F.R. § 416.927(c). "The ALJ is not required, however, to discuss all of the factors in 20 C.F.R. § 404.1527 when considering a medical opinion." *See Walters v. Colvin*, No. 7:14-CV-280-FL, 2016 WL

stand or walk for 15 minutes at a time. (Tr. 442.) Plaintiff needs to frequently elevate legs during the workday and would need unscheduled interruptions of work routine to leave the work station to alleviate the pain during the day. (Tr. 443.) Dr. Kashefsky also stated that Plaintiff will need four to five breaks a day. (*Id.*) The ALJ gave partial weight to Dr. Kashefsky's opinion because plaintiff "did not take any medications for her pain and . . . there is nothing to indicate that her pain is of such a severe nature that surgery was ever recommended and it does not appear that the pain would prevent the claimant from maintaining employment with some limitations." (Tr. 22.) The ALJ's decision to assign little weight to Dr. Kashefsky's opinion due to the conservative nature of Plaintiff's treatment and the lack of evidence as to the need for surgery are valid reasons for not giving Dr. Kashefsky controlling weight. *Somerville*, 2015 WL 1268258, at *3; *Bright*, 2014 WL 5871348, at *10; *Lucas*, 2012 WL 6917052, at *6. Notwithstanding the stringent functional limitations set out in Dr. Kashesfsky's opinion, the record indicates that Plaintiff's treatment was limited to medication, epidural steroid injections, and recommendations to watch her diet and exercise. (Tr. 472, 477, 486, 530, 532, 534.) As discussed above and detailed by the ALJ in his analysis, the ALJ's decision to accord less than controlling weight to Dr. Kashefsky's opinion is supported by substantial evidence.

Plaintiff contends that the ALJ incorrectly discredited Dr. Kashefsky's opinion "by . .

---

1043723, at *9 (E.D.N.C. Feb. 26, 2016), *report and recommendation adopted*, No. 7:14-CV-280-FL, 2016 WL 1045531 (E.D.N.C. Mar. 15, 2016); *Ware v. Astrue*, No. 5:11-CV-446-D, 2012 WL 6645000, at *2 (E.D.N.C. Dec. 20, 2012).

. stating that the claimant did not take any medication for pain." (Docket Entry 16 at 5.) However, Plaintiff takes the ALJ's statement out of context. The ALJ simply noted that on January 3, 2013, Dr. Kashefsky indicated that Plaintiff did not take any medication "for her discomfort and is not sure if she had any x-rays." (Tr. 22, 374.) Therefore, the ALJ correctly noted Plaintiff's lack of treatment for her impairments because Dr. Kashefsky himself acknowledged this. Plaintiff counters by stating that "the ALJ failed [to] consider the reason the claimant was without her medications on a few occasions as required by Social Security Ruling 96-7p." (Docket Entry 16 at 5.) Plaintiff contends that the ALJ failed to consider valid reasons for her failure to obtain medication including "an inability to afford treatment." (*Id.* at 6.) However, Dr. Kashefsky noted that Plaintiff "reported that she was given a recommendation to try over-the-counter orthotics . . . but she was unable to afford them, the custom type rather. She was only able to get the over-the-counter ones, tired them for a short period of time, they did not help." (Tr. 374.) Thus, Dr. Kashefsky himself noted that Plaintiff was able to afford the type of treatment that was recommended to Plaintiff. Additionally, on May 6, 2013, it was noted that Plaintiff "state[d] she ha[d] been on Celebrex in the past without any help. She state[d] she did take Flexeril one time in the past and that was helpful with all the cramps she was having in her lower back." (Tr. 405.) These facts indicate that Plaintiff had access to treatment.

Plaintiff also contends that "the ALJ discredited Dr. Kashefsky's opinion because a surgery had not been recommended without considering why it had not been." (Docket Entry 16 at 6.) Plaintiff does not point to any evidence in the record indicating that a

13

physician suggested surgery for Plaintiff's impairments. Furthermore, conservative treatment that is inconsistent with a physician's opinion is a valid reason for giving less than controlling weight to an opinion. *Somerville*, 2015 WL 1268258, at *3; *Bright*, 2014 WL 5871348; *Lucas*, 2012 WL 6917052.

Lastly, Plaintiff contends that the ALJ did not consider the consistency between the opinions of Amy Ford, PA-C and Dr. Kristin Ito and Dr. Kashefsky's opinion. (Docket Entry 16 at 7.) However, the ALJ addressed both opinions and found that each opinion was inconsistent with other substantial evidence in the record. The fact that the opinions were consistent with one another is immaterial if both opinions are considered inconsistent with other substantial evidence in the record. *See Craig*, 76 F.3d at 590 ("[I]f a physician's opinion is not supported by clinical evidence or if it is inconsistent with other substantial evidence, it should be accorded significantly less weight.") Thus, Plaintiff's argument that the ALJ failed to consider the consistency between Amy Ford, PA-C and Dr. Kristin Ito and Dr. Kashefsky's opinions is insufficient to require remand.

14

Case 1:16-cv-00090-CCE-JLW Document 19 Filed 11/29/16 Page 14 of 15

## V. CONCLUSION

After a careful consideration of the evidence of record, the Court finds that the Commissioner's decision is supported by substantial evidence and was reached based upon a correct application of the relevant law. Accordingly, this Court **RECOMMENDS** that Plaintiff's motion for judgment on the pleadings (Docket Entry 15) be **DENIED**, that Defendant's motion for judgment on the pleadings (Docket Entry 17) be **GRANTED**, and that the final decision of the Commissioner be upheld.

/s/ Joe L. Webster
Joe L. Webster
United States Magistrate Judge

November 29, 2016
Durham, North Carolina